### THE LIMITATION OF MUNICIPAL INDEBTEDNESS.

Circuit Court of Cuyahoga County.

THE CITY OF CLEVELAND, BY NEWTON D. BAKER, ETC., v. THE CITY OF CLEVELAND ET AL.*

Decided, November 14, 1910.

*Municipal Corporations—Authority of, to Borrow Money—Application of the Four Per Cent. Limitation of the Longworth Act—Voted Bonds and Bonds Not Voted—Construction of Section 3945, General Code.*

The statutory limitation upon the authority of municipal corporations to borrow money by an issue of bonds does not act upon bonds lawfully issued for a purpose within the statute upon approval of the electors of the corporation.

*Newton D. Baker*, City Solicitor, for plaintiff.
*Squire, Sanders & Dempsey* and *W. D. Wilkin*, Assistant City Solicitor, contra.

HENRY, J.; MARVIN, J., and WINCH, J., concur.
Heard on appeal.

---

* Affirmed by the Supreme Court without opinion, December 20, 1910 (83 Ohio St., —); grounds stated in journal entry.

This is an action to enjoin an issue of bonds by the city of Cleveland as exceeding the statutory limit of municipal indebtedness.

General Code, Section 3939, authorizes the council of any municipal corporation by two-thirds' vote to issue bonds for any of twenty-seven different purposes.

General Code, Sections 3940 and 3941, limit the exercise of this power in any fiscal year to the issuing of bonds in an aggregate amount not exceeding one per cent. of the assessed valuation, unless the excess be authorized by a two-thirds' vote of the electorate.

General Code, Section 3942, further limits the exercise of the power to issue bonds to an aggregate net indebtedness of four per cent. of the assessed valuation, unless an excess be authorized by like vote.

General Code, Section 3943, defines net indebtedness to be the difference between the amount of outstanding bonds and the sum in the sinking fund for their redemption.

General Code, Section 3944, provides that net indebtedness does not include obligations for work to be done until the bonds therefor are issued.

General Code, Section 3945, provides further (and I quote it exactly because of its disputed meaning) that:

"Such limitations of one per cent. and four per cent. hereinbefore described shall not affect [or, as phrased in Rev. Stats., Sec. 2833b, 'shall not be construed as affecting'] bonds lawfully issued for such purposes upon approval of the electors of the corporation."

General Code, Sections 3946 and 3947, provide still further that special assessment bonds and water works bonds, for the payment of which the special sources of revenue suffice, and also bonds issued before April 29, 1902, "shall not be considered in ascertaining such limitations," but that regular annual tax levies shall be made, sufficient to pay the bonds at maturity.

General Code, Sections 3948 to 3954 inclusive, define the mode of procedure for voting bonds in excess of said limitations; and the last section prohibits a net indebtedness exceeding eight per cent. in any case. It concludes with these words: "In as-

certaining the limitations of such eight per cent. and of such four per cent., all such bonds shall be considered except those hereinbefore excluded.''

Those excluded are defined by General Code, Sections 3943 to 3946 inclusive, as above summarized, viz.: the bond redemption fund, certain obligations for which bonds have been authorized but not yet issued, special assessment bonds, water works revenue bonds, and bonds issued before April 29, 1902.    In ascertaining the four per cent. limitation of bonds issuable without vote, are we to exclude also all bonds previously authorized by vote? The question arises here because the city of Cleveland has a bonded debt of more than four per cent., partly authorized by vote and partly issued without vote.    The bonds here sought to be enjoined will not increase the amount of the latter class above four per cent. of the assessed valuation.

The question then is whether the Longworth act, which includes the General Code sections above noted, divides municipal bonds issued thereunder into two distinct classes, voted bonds and unvoted bonds, and applies the four per cent. limitation only to the latter class, or whether it treats all bonds issued thereunder as constituting but one class for the application of the four per cent. limitation.    The solution of this question turns chiefly upon the construction to be given to General Code, Section 3945, above quoted.

According to the view which has hitherto prevailed among city officials and the state bar generally, these bonds should not be enjoined; but a recent opinion of the Attorney-General, reinforced by that of eminent counsel here, retained to pass upon this issue of bonds, is to the contrary effect.

What is meant by the provision of General Code, Section 3945, that the limitations of one and four per cent. ''shall not affect bonds'' voted by the electors?    The plaintiff's construction is that the limitations shall not disturb bonds so approved. This accords with the popular meaning of the word ''affect''; but it is absurdly redundant, as saying that duly validated bonds shall not be deemed invalid.

The defendant's construction, more nearly in accordance with the primary etymological sense of the word, and the reasonable

intent of the Legislature, is that the limitations shall not *act upon* bonds so approved; *i. e.*, that voted bonds "shall not be considered in ascertaining such limitations." Why not then have used this phraseology, as in the next section it is used? The only reply is that the successive sections represent separate amendments engrafted on the Longwarth act from time to time by different Legislatures. General Code, Section 3946, is certainly more happily phrased than is the preceding section with its equivocal wording. Yet kindred uses of the term "affect" obtain in mathematics and in law. A given quantity is "affected" with or by a co-efficient, exponent, logarithm, divisor, or the like. One is "affected" by, or with, constructive notice. A privy is "affected" with another's fraud. So here, a city's corporate power of incurring indebtedness, and hence the actual bonded debt, which it has incurred, are affected by statute with a four per cent. limitation. But the limitation does not thus affect bonds issued upon the approval of the electors.

The intent of the Legislature thus appears to be that the limitations of one and four per cent. shall not act upon or apply to bonds issued upon approval of the electors.

Construing General Code, Section 3945, by itself, this may seem to be not merely an uncommon, but also a very strained construction of the word "affect." But when we come to consider by what mathematical processes the limitation is actually applied in ascertaining whether or not a city's net debt has reached, or is about to pass, the limit fixed by statute, the construction ceases to seem strained at all. The computation may be begun from either of two opposite directions.

Approaching the problem from the side of the assessed valuation as the starting point, or base, we may multiply that number by the rate per cent. of limitation, *i. e.*, by 4 per cent. four-hundredths, or one twenty-fifth, and compare the product with the actual net debt.

Approaching the problem from the other side, we may take the actual net debt as the starting point, multiply this number by twenty-five (which is the equivalent of dividing it by 4 per cent., or one-twenty-fifth) and compare the product with the assessed valuation.

In other words, we may start on the side of the assessed valuation, or on the side of the actual net debt, and affect either one of them quantitatively with the per cent. limitation, according to the recognized arithmetical rule applicable to the particular case.

The limitation of course amounts to nothing except it be applied; and it can be applied only by some method of computation. The methods described are equally valid. Each method necessarily involves, first or last, the application of the appropriate mathematical process to the quantity representing the net debt. The per cent. limitation, by one or other of these processes, mathematically affects the net debt, that is, it acts upon it—which is the etymological meaning of the term "affects."

It may be granted that this is not the commonest sense of the word. Popularly it connotes change, transformation. But thus construed, the word as used in the Longworth act is manifestly inappropriate. The unusual meaning is much the more reasonable; and therefore it is to be preferred as the true meaning.

Bearing in mind what has been said about the process of applying the limitations of the Longworth act, it is not a wide departure from even the popular sense of the word "affect" to ask, what is the net debt which the per cent. limitation is to affect? What constitutes or enters into the net debt which the limitation is to act upon or apply to? In the process of concretely applying the limitation, what quantity is our multiplier or co-efficient to effect? To what, in the comparison of our ascertained limit of debt, is our standard to apply?

The answer seems perfectly plain though negatively expressed in General Code, Section 3945:

"Such limitations of one per cent. and four per cent. shall not affect [act upon] bonds lawfully issued for such purposes upon the approval of electors of the corporation."

This we hold to be the meaning of General Code, Section 3945, and of the limitations contained in the Longworth act; whence it follows that the petition must be, and it is dismissed.